IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

GLADYS ALVERIO WILLIAMS, individually and
on behalf of a class

                                           Case No.: 11-cv-2607(LBS)(DCF)

                  Plaintiff,

     v.

DEUTSCHE BANK NATIONAL TRUST COMPANY
and FEIN, SUCH & CRANE, LLP

                  Defendants.

-------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS FILED BY THE DEFENDANTS

**The Law Offices of Shimshon Wexler, PC**
**Shimshon Wexler**
**2710 Broadway, 2nd Floor**
**New York, New York 10025**
**(212)760-2400**
**swexler@collectorabuselaw.com**
*Attorney for Plaintiff*

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT...................................................................1

II.     EACH OF THE DEFENDANTS IN THIS CASE ARE DEBT COLLECTORS AS DEFINED BY THE CODE AND THE FDCPA...............................................................6

    A. FEIN.....................................................................................6

    B.  DEUTSCHE........................................................................12

III.    DEUTSCHE IS VICARIOUSLY LIABLE FOR THE ACTIONS OF FEIN...........14

IV.     JUDICIAL FORECLOSURE IS COLLECTION OF A "DEBT" AS DEFINED BY THE FDCPA AND THE CODE.......................................................14

V.      THE FILING OF A FORECLOSURE COMPLAINT WHILE NOT BEING LICENSED BY THE CODE IS AN FDCPA VIOLATION......................................16

VI.     THE PAYOFF AND REINSTATEMENT LETTERS MAILED TO PLAINTIFF'S ATTORNEY THAT HAD PLAINTIFF'S NAME AND ADDRESS ON IT CONSTITUTE A "COMMUNICATION" AND VIOLATE THE FDCPA......................................20

VII.    DEFENDANTS HAVE VIOLATED GBL 349 BY FILING UNLAWFUL FORECLOSURE COMPLAINTS.......................................................24

## I.   PRELIMINARY STATEMENT

Defendants Fein, Such & Crane, LLP ("Fein or FS&C") and Deutsche Bank National Trust Company ("Deutsche") have each filed a motion to dismiss pursuant to Rule 12b(6). Plaintiff is filing this opposition to address both motions as the issues raised in the defendants' motions are intertwined and overlapping.

The plaintiff's claims arise from two distinct allegations that are independent of one another and each is not dependant on the next to survive as Deutsche erroneously claims. The first wrongful act complained of is that the defendants filed a foreclosure complaint while being required to, but not being, licensed under the New York City Administrative Code while attempting to collect a debt. The Code makes such collection activity "unlawful". The Fair Debt Collection Practices Act ("FDCPA") provides in various subsections that collecting while unlicensed is a violation of the FDCPA.

Second, within the foreclosure complaint sent to the plaintiff, she was given what is commonly known as the "g" rights under the FDCPA. See Exhibit A. These rights include allowing the consumer to seek verification of the amount of the debt and the right to seek the name and address of the original creditor if different from the current creditor. The plaintiff brought the entire complaint with the verification rights to plaintiff's counsel. Plaintiff's counsel exercised the rights of the consumer by disputing the debt and asking for the name and address of the original creditor and was sent a cover letter as well as payoff and reinstatement figures from Fein. See Exhibit B. The payoff and reinstatement figures form the basis for the second FDCPA violation. They misrepresent the nature of the action by falsely giving the incorrect title of the underlying foreclosure case and give the false impression that the servicer is the creditor.

Congress enacted FDCPA in order "to eliminate abusive debt collection practices by debt

1

collectors, to insure that those debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent State action to protect

consumers against debt collection abuses. To achieve this goal, and to protect the most

vulnerable population of debtors from abusive and misleading practices, we have construed

FDCPA to require that debt collection letters be viewed from the perspective of the "least

sophisticated consumer." *Greco v. Trauner, Cohen & Thomas, L.L.P.,* 412 F.3d 360 (2nd Circuit,

2005) "To recover damages under the FDCPA, a consumer does not need to show intentional

conduct on the part of the debt collector. The Act "is a strict liability statute, and the degree of a

defendant's culpability may only be considered in computing damages." A single violation of the

FDCPA will give rise to liability. *Ellis v. Solomon & Solomon, P.C.,* 591 F.3d 130 (2nd Cir.

2010). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive

and deceptive debt collection practices, and courts are not at liberty to excuse violations where

the language of the statute clearly comprehends them. Congress provided ample discretion to

courts, however, in assessing damages for violations of this statute." *Pipiles v. Credit Bureau of*

*Lockport, Inc.,* 886 F.2d 22, 27 (2d Cir. 1989). The Act is designed to protect consumers from

unscrupulous collectors, whether or not there is a valid debt. *Mace v Van Ru Credit Corp.,* 109

F.3d 338 (7th Cir. 1997).

Defendants claim that plaintiff's attorney in drafting the complaint intended to deceive

the court into believing the letter was sent directly to the consumer is completely baseless. The

complaint never stated this nor did it imply this.

Defendants claim that a letter sent to a consumer's attorney is not actionable under the

FDCPA displays a misreading of the text of the statute as well as a lack of basic understanding of

the legislative purpose of the FDCPA. Their claims are directly contradicted by a Third Circuit

2

Court of Appeals case which held that a letter sent to a consumer's attorney is actionable under the FDCPA. The case involved Fein, Such, Kahn & Shepard, P.C. which is the partner of Fein, Such & Crane, LLP.

Deutsche makes conclusory, naked and bald assertions that it acquired plaintiff's loan as part of a securitization package in 2007. There is no evidence of this at all. There is not even mention, as far as plaintiff's attorney saw, in any of the exhibits attached to Deutsche's motion that such a transfer took place. Nor is there mention of the loan in the pooling and servicing agreement which Deutsche references. Deutsche attempts to distract the Court from the crucial issue that nothing in the record shows that Deutsche was assigned anything in 2007. There are no affidavits or schedules relating to any transfer of the Note taking place in 2007. The Note contains an undated assignment in blank that is not even notarized making any transfer completely invalid. See Exhibit C. Therefore, the date of the transfer is unknown from the face of the note and in any event, it would not even be valid because it is not notarized.

Fein and Deutsche differ on the date the mortgage and note was assigned to Deutsche. It seems that the only evidence of a transfer of the note and mortgage in July 2007 to Deutsche is the coclusory statements throughout its memorandum of law such as on the bottom of page 11 to the top of page 12, where in the most conclusory manner Deutsche states "Following the transfer of the loan and Note in July 2007, Deutsche Bank became the "lender" and note holder and, as a result, it also became the holder of the Mortgage at the same time." See Exhibit D. Co-defendant Fein makes a contrary statement under the penalty of perjury in a Declaration by one of its partners David P. Case. He states in paragraph 7 that "[T]he mortgage had been assigned to Deutsche by virtue of an Assignment of Mortgage executed on February 25, 2011 which was subsequently sent to the Kings County Clerk's Office to be recorded on March 1, 2011." See

3

Exhibit E.

According to New York's Real Property Law assignments of mortgages and notes are required to be notarized. This note is not notarized and therefore any purported transfer would be invalid anyways. See Exhibit C.

New York's Real Property Law § 290 entitled  "definitions; effect of article" states:

3. The term "conveyance" includes every written instrument, by which any estate or interest in real property is created, transferred, mortgaged, or assigned, or by which the title to any real property may be affected....

New York's Real Property Law § 292 entitled "By whom conveyance must be acknowledged or proved" states:

"Except as otherwise provided by this article, such acknowledgment can be made only by the person who executed the conveyance, and such proof can be made only by some other person, who was a witness of its execution, and at the same time subscribed his name to the conveyance as a witness."

Since there were no witness subscribed to the endorsement, the endorsement is completely invalid and a nullity. See *Bacolistats v. 86th & 3rd Owner, LLC*, 2010 U.S. Dist. LEXIS 99642 (SDNY) quoting *Griffith v. Bergstol*, 23 A.D.2d 686 (2d Dept. 1965).

Deutsche attaches in its "Exhibit C" what it claims are "relevant exerts" *sic* of the pooling and service agreement which it claims to apply to the loan at question. It attaches page 38 but not page 39. Apparently this is because Deutsche believes page 39 is not relevant. Page 39 certainly does seem relevant, page 39 states in part that "In addition, in connection with the assignment of any MERS Mortgage Loan, [IndyMac Bank, FSB] agrees that it will cause, at [Indy Mac Bank, FSB's] expense, the MERS System to indicate that the Mortgage Loans sold by [IndyMac Bank,

4

FSB] to [IndyMac Bank, MBS] have been assigned by the Seller to the Trustee in accordance with this Agreement for the benefit of the Certificateholders by including…. In such computer files the information required by the MERS System to identify the series of the Certificates issued in connection with such Mortgage Loans." See Exhibit F.

Deutsche has not provided any assignment from MERS and there only appears to be an assignment from MERS in 2011, well after the loan was in default. Thus, Deutsche's position that it acquired the loan in 2007 prior to the loan being in default is directly contradicted by the very agreement it relies upon. See Exhibit G.

Furthermore, Deutsche arguing that it acquired the loan in 2007 contradicts the explicit wording in the "Assignment of Mortgage" dated February 25th, 2011 which was attached to the foreclosure complaint. The assignment states that "Assignor does hereby assign and transfer to Assignee all rights accrued under said mortgage and all indebtedness secured thereby." See Exhibit G. As stated above, Fein also claims in a declaration that the mortgage was assigned in 2011. See Exhibit E. Therefore, the record clearly shows that with regards to this loan, Deutsche is a "debt collector" as defined by the FDCPA because it acquired the loan after default.

The Court should not be surprised that Deutsche is unable to provide evidence of a claimed transfer taking place. Courts in New York have frequently rejected the contention of foreclosing plaintiffs, who claim, but provide no evidence that the mortgage and note have been assigned to them. *Deutsche Bank Natl. Trust Co. v Stevens*, 2010 NY Slip Op 50909U (Kings County); *Deutsche Bank Trust Co. Americas v Picon*, 2011 NY Slip Op 31747U (Queens County); *U.S. Bank, N.A. v. Collymore*, 2009 NY Slip Op 9019 (2d Dept.); Aurora Loan Servs., LLC v Weisblum, 2011 NY Slip Op 4184 (2d Dept*.); Deutsche Bank Nat'l Trust Co. v. McRae*, 2010 NY Slip Op 20020 (Allegany County); *Bayview Loan Servicing, LLC v Bozymowski*, 2011

NY Slip Op 50240U (Suffolk County); See also *Munger v. Deutsche Bank*, 2011 U.S. Dist. LEXIS 77790 (Northern District of Ohio) (Denying motion to dismiss FDCPA claim where allegations were that Deutsche Bank acquired the loan after default.)

The cover letter (See Exhibit B) which has been stressed by the defendants but not included in plaintiff's complaint is gibberish and as an aside likely violates the FDCPA. The cover letter incorrectly states "Insofar as your correspondence is considered a request for debt validation, we are exempt from responding to the remainder of your questions pursuant to the FDCPA, NYC administrative code § 20-473.2(a) and NYC administrative code § 20-483(a)(5)." The letter goes on, "[T]herefore, we are rejecting and returning the enclosed papers to you." Fein of course is not exempt from a request for debt validation. It gave those exact rights in the foreclosure complaint. See Exhibit A. In addition, the sections that it quotes from the Code seem to be applicable to general vendors and storage warehouses and have nothing to do with exempting Fein from debt validation. See Exhibit H.

## II.    EACH OF THE DEFENDANTS IN THIS CASE ARE "DEBT COLLECTORS" AS DEFINED BY THE CODE AND THE FDCPA

### A. FEIN

The FDCPA and the Code are applicable to Fein because it meets the definition of a debt collector as defined by each of the statutes. A "debt collector" is defined by the FDCPA Section a(6) as "any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

Litigation activities are covered by the FDCPA. The Supreme Court of the United States

has held that collection of debts by means of filing lawsuit does not exempt a collector from the requirements of the FDCPA and the FDCPA applies to collection law firms. "[T]he [FDCPA] applies to attorneys who "regularly" engage in consumer-debt-collection activity, even when that activity consists of litigation." Heintz v. Jenkins, 514 US 291 (1995).

According to Fein's website as of August 17th, 2011, Fein, Such, Kahn & Shepard, P.C. formed Fein, Such & Crane, LLP to pursue collection matters in Upstate and Downstate New York through demand letters, computer assisted research and attempted telephone communication. See Exhibit I.

Notably, on Fein's letterhead as shown by Exhibit B to this motion, directly below Fein, Such & Crane, LLP it states Northern New York Partner and then gives the name and address for the law firm of Relin, Goldstein & Crane, LLP ("Relin"). Relin is licensed by the New York City Department of Consumer Affairs as a debt collector and it has the same exact address as the law firm of Fein, Such & Crane, LLP. See Exhibit J. Mr. Crane is a named partner of both Relin and Fein according to his profile on Fein's website. See Exhibit K. Additionally, Mr. Broyles is the individual who signed the foreclosure complaint (See Exhibit L), and he is a partner of Relin and the supervising attorney of Fein. See Exhibit K. Lastly, David P. Case has declared under the penalty of perjury that he is a partner of Fein (See Exhibit E) and according to Relin's website he is an associate of that firm. See Exhibit K.

Rule 7.5 of the New York Rules of Professional Conduct, regarding Professional Notices, Letterheads and Signs, states that "Lawyers shall not hold themselves out as having a partnership with one or more other lawyers unless they are in fact partners." It is fair to say that Relin is a partner of the law firm of Fein and Relin undoubtedly is a debt collector as it is licensed by the New York City Code as such.

7

Also, according to a August 25, 2011 decision in the United States District Court for the Eastern District case entitled "*Bessie Zirogiannis, individually and on behalf of a class v. Fein, Such & Crane, LLP; Fein, Such, Kahn & Shepard, P.C.; Relin, Goldstein & Crane, LLP*" having an index number of 2:10-cv-01657, FS&C is a co-venture between FSK&S and RG&C. The decision denied defendants' motion to dismiss and found that there is a question of fact as to whether FS&C's acts are attributable to RG&C and FSK&S. See <u>Exhibit M</u> pages 3-4.

The New York City Administrative Code Title 20 Section 489 defines the term debt collection agency:

a. "Debt collection agency" shall mean a person engaged in business the principal purpose of which is to regularly collect or attempt to collect debts owed or due or asserted to be owed or due to another and shall also include a buyer of delinquent debt who seeks to collect such debt either directly or through the services of another by, including but not limited to, initiating or using legal processes or other means to collect or attempt to collect such debt. The term does not include:.......

(5) any attorney-at-law or law firm collecting a debt in such capacity on behalf of and in the name of a client solely through activities that may only be performed by a licensed attorney, *but not any attorney-at-law or law firm or part thereof who regularly engages in activities traditionally performed by debt collectors*, including, but not limited to, contacting a debtor through the mail or via telephone with the purpose of collecting a debt or other activities as determined by rule of the commissioner;" (emphasis added)

Prior to July 26, 2009, the exception in (5) only stated "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." Hence, the clear legislative intent is to make clear that not all attorneys and law firms are exempt from the licensing scheme. Rather,

the only attorneys and law firms that are exempt from being licensed are those that perform activities that can only be performed by a licensed attorney. The amended version of the statute requires that a collector collecting debts who does not exclusively collect through activities which may be only be done by attorneys must be licensed when engaged in any collection activities.

The case of Scott v. J. Anthony Cambece Law Office, PC 600 F Supp 2d 479 which is cited by Fein, notes that attorneys who collect debts *only* through activities which may be performed by licensed attorneys need not be licensed by the Code. Plaintiff does not dispute this point. In Scott, as in the case before this court, the defendant moved to dismiss using the same argument that defendant uses now, namely, that defendant is an attorney and is exempt from the requirements of the Code. In Scott, the Court denied the motion to dismiss holding that the defendant had not shown that it was engaged in activities which solely could be performed by attorneys. In Scott, the court specifically held that it did not have to address whether a New York City Department of Consumer Affairs opinion letter discussing the licensure requirements is correct or not but noted that it should be given deference.

The General Counsel of the New York City Department of Consumer Affairs, Marla Tepper, issued an opinion letter dated March 7th 2007 addressing the situation before us. See Exhibit N. When the Code was amended, July 26, 2009 to include debt buyers, it also instituted the changes that this letter addressed as it relates to law firms who collect debts through activities that can only be performed lawyers as wells as through collection activities that can be done by non lawyers. The letter stated in part that:

"The Department takes this opportunity to make clear that all attorneys and law firms are not exempt from our licensure requirements. The Code narrowly exempts from the definition of

"debt collection agency""any attorney-at-law collecting a debt *as an attorney* on behalf of and in the name of a client." New York City Administrative Code § 20-489(a)(5)(emphasis added). <u>Thus, the Code's exemption applies to those attorneys whose practice is **_limited_** to legal activities such as the filing and prosecution of lawsuits to reduce debts to judgments.</u> The narrow exception does not, however, cover attorneys or law firms that regularly engage in activities traditionally associated with debt collection such as sending demand letters (dunning notices) or making telephone collection calls to consumers. Such attorneys and law firms are "debt collection agencies" under the New York City Administrative Code and must be licensed by the Department." (emphasis added)

*Kuhne v. Cohen & Slamowitz, LLP et al.*, 2008 U.S. Dist. LEXIS 17197 (S.D.N.Y.), was a case which involved the question of whether under the pre-amendment version of the Code, is one who acquires defaulted debts but enlists others to file lawsuits on its behalf required to be licensed by the Code (The Code was later amended to clearly require such buyers of defaulted debt to be licensed). The opinion in distinguishing the case of *Rushmore* in which a debt buyer was held to be required to be licensed, noted that in Kuhne's situation, the debt buyer (Midland) was insulated from the licensing requirement because Midland's legal counsel Cohen & Slamowitz, LLP ("C&S") was licensed. Even though C&S was collecting through activities that could only be performed by attorneys (filing lawsuits), C&S nevertheless was able to insulate Midland which was not licensed by the Code. It is logical that C&S would only be able to insulate Midland from the licensure requirements if C&S was also required to be licensed.

The Court in *Kuhne* states that the Tepper letter is entitled to some deference: "Kuhne argues that the Tepper letter is not persuasive. However, as this district has observed, the New York State Court of Appeals "has made clear [that] 'the interpretation given to a regulation by an

agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable.'" See Brentwood *Pain & Rehabilitation Servs., P.C. v. Allstate Ins. Co.,* 508 F. Supp. 2d 278, 290 (S.D.N.Y. 2007) (internal citations omitted). Here, the DCA promulgates the New York City licensing statute on its web site and is responsible for its administration. *See also National Ass'n of Home Builders v. Defenders of Wildlife,* 127 S. Ct. 2518, 2537-38, 168 L. Ed. 2d 467 (2007) ("An agency's interpretation of the meaning of its own regulations is entitled to deference unless plainly erroneous or inconsistent with the regulation.") (internal quotation marks and citation omitted)."

"The Tepper letter, while not binding on me, is persuasive. The Supreme Court in *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000), held that "[i]nterpretations such as those in opinion letters--like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law--do not warrant *Chevron*-style deference" but nevertheless are entitled to "some deference" and "respect." *Id.* (quoting *Reno v. Koray,* 515 U.S. 50, 61, 115 S. Ct. 2021, 132 L. Ed. 2d 46 (1995) and *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124(1944))."

As explained in *Centurion Capital Corp. v. Druce*, 2006 NY Slip Op 26521 "Administrative Code § 20-488 states that the statute's purpose is to curb abusive debt collection practices. This purpose, the same as that of the FDCPA, must be taken into account when construing the statute. In addition, because the New York City statute was patterned on the FDCPA, this court will also look to interpretations of the federal act for guidance. (*See Matter of Lazarus [Haxton & Son, Inc.--Corsi]*, 268 App Div 547, 52 NYS2d 682 [3d Dept 1944] [federal decisions highly persuasive and uniformity in interpretation of federal statutes and state statutes desirable].)" Hence, as Fein is an FDCPA debt collector it is also a debt collector under the

11

Code.

## B. DEUTSCHE

Deutsche is a debt collector as defined by the FDCPA and the Code. A recent case from the District Court in New Jersey explains why it is an FDCPA debt collector:

"It is important to address…..the rationale underlying the FDCPA's distinction between purchasers of defaulted debt, *i.e.*, debt buyers, and purchasers of non-defaulted debt. The goal of the FDCPA is to regulate third-party debt collectors who are primarily engaged in the *business of debt collection* as opposed to the initial lender or originator of the debt. Keeping with its goal of regulating those in the business of debt collection, the FDCPA distinguishes between assignees of a debt who service the loan and those who merely attempt to collect upon the default thereof."

"In [*FTC v. Check Investors*, 502 F. 3d 159, 171-72 (3rd Cir. 2007)], the Third Circuit quotes from *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 538 (7th Cir. 2003), a Seventh Circuit opinion that explains:

[Under the FDCPA,] a creditor is broadly defined as one who "offers or extends credit creating a debt or to whom a debt is owed," 15 U.S.C. § 1692a(4), whereas a debt collector is one who attempts to collect debts "owed or due or asserted to be owed or due another." Id. § 1692a(6)."

For purposes of applying the Act to a particular debt, these two categories-debt collectors and creditors—are mutually exclusive. However, for debts that do not originate with the one attempting collection, but are acquired from another, the collection activity related to that debt could logically fall into either category. *If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt. On the other hand, if*

*it simply acquires the debt for collection, it is acting more like a debt collector.* Id. at 536 (emphasis added)."

"Schlosser, further, explains the rationale underlying the FDCPA's focus on the status of the debt at the time it is acquired by the assignee:

Focusing on the status of the obligation asserted by the assignee is reasonable in light of the conduct regulated by the statute. For those who acquire debts originated by others, the distinction drawn by the statute—whether the loan was in default at the time of the assignment—makes sense as an indication of whether the activity directed at the consumer will be servicing or collection. *If the loan is current when it is acquired, the relationship between the assignee and the debtor is, for purposes of regulating communications and collections practices, effectively the same as that between originator and the debtor. If the loan is in default, no ongoing relationship is likely and the only activity will be collection.* 502 F.3d at 174 (quoting *Schlosser*, 323 F.3d at 538) (emphasis added). In Congress' view, third-party debt collectors of past due debts, unlike initial lenders of credit, are not "restrained by the desire to protect their good will [with the consumer] when collecting past due accounts, [but] are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them." Id. at 173 (internal quotation marks and citations omitted)." *Chulsky v. Hudson Law Offices, P.C.*, 2011 U.S. Dist. LEXIS 29781.

In addition, Deutsche meets the exact definition of "debt collector" as defined by the Code. It did not acquire the loan in 2007 but rather through the "Assignment of Mortgage" dated February 25th, 2011, which was after the loan was in default as explained above. Deutsche cites the case of *Brown Bark I, L.P. v. Westside Home Improvements, Inc.*, No. 0018259/2007, 2008 WL 1881548(Supreme Court Kings County, 2008) for the holding that 20-489 is inapplicable

where the party is collecting upon the debt which it purchased from Bank of America and now owns in its own name. This ruling is <u>prior to the amendment</u> of July 26, 2009 which specifically included purchasers of defaulted debt under the definition of "debt collector".

The Code in its current version states:

"Debt collection agency" shall mean a person engaged in business the principal purpose of which is to regularly collect or attempt to collect debts owed or due or asserted to be owed or due to another <u>and shall also include a buyer of delinquent debt who seeks to collect such debt either directly or through the services of another by, including but not limited to, initiating or using legal processes</u> or other means to collect or attempt to collect such debt." Deutsche fits square within this definition.

## III. DEUTSCHE IS VICARIOUSLY LIABLE FOR THE ACTIONS OF FEIN

Deutsche is vicariously liable for the actions of it attorney Fein. See *Schutz v. Arrow Fin. Servs., LLC*, 465 F. Supp. 2d 872 (N.D.Ill. 2005); *Fox v. Citicorp*, 15 F.3d 1507, 1516 (9th Cir. 1994); *Kimber v. Fed. Fin. Corp.,* 668 F. Supp. 1480, 1486 (M.D. Ala. 1987); *Pollice v. National Tax Funding, L.P.,* 225 F.3d 379 (3d Cir. 2000).

## IV. JUDICIAL FORECLOSURE IS COLLECTION OF A "DEBT" AS DEFINED BY THE FDCPA AND THE CODE

The FDCPA and the Code define debt exactly the same: "The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." The Code also includes obligations for child support.

The Supreme Court of the United States recently decided whether the bona fide error

14

defense in the FDCPA applies to mistakes of law in the foreclosure context. The Court in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605 (2010) ruled that where a debt collector made an error of law it could not escape FDCPA liability even if it had procedures in place to prevent such an error. This is as opposed to clerical errors where if the debt collector had procedures in place designed to stop the specific clerical error in question and it nevertheless committed a clerical error it would not be liable under the FDCPA. The defendants in this case were foreclosure attorneys and the issue as to whether they as foreclosure attorneys were covered under the FDCPA was not even addressed as it was obvious that they were. Nor did the Court imply that Jerman would lose her rights under the FDCPA because she had hired an attorney and the attorney on behalf of the consumer exercised her right to dispute the debt.

Deutsche attempts to argue that enforcement of a security interest is not governed by the FDCPA because it is not collection activity. In *Schuh v. Druckman & Sinel, L.L.P.,* 602 F. Supp. 2d 454 (S.D.N.Y. 2009) The Court stated concerning whether a judicial foreclosure in New York comes within the FDCPA that "We note further that cases have distinguished between efforts to enforce a security interest through non-judicial means (held not to come within the FDCPA) an efforts undertaken to seek a judgment personally against a debtor (held to come within the FDCPA). See, e.g., *McDaniel v. South & Assocs., P.C.,* 325 F. Supp. 2d 1210, 1216-18 (D. Kan. 2004)." ("The court holds that Defendant's actions in filing a judicial foreclosure proceeding against Mr. McDaniel amounted to debt collection activity under the FDCPA.")

The exact case cited by the defendant of *Beadle v Haughey*, No. Civ.04-72, 2005 WL 300060 (D.N.H.) clearly distinguishes between judicial foreclosure and non-judicial foreclosure. In noting why judicial foreclosure falls under the ambit of the FDCPA, and why non-judicial foreclosure does not, the Court noted "There are several cases in which foreclosure has been held

to be debt collection, but those cases involve distinguishing factual circumstances not present here. In *McDaniel v. South & Associates, P.C.,* 325 F. Supp. 2d 1210 (D. Kan. 2004), the court distinguished *Bergs, Hulse,* and *Heinemann* on grounds that the defendant law firm engaged in a broader scope of activity - seeking judicial rather than non-judicial foreclosure, as well as a personal judgment against the property owner, which additional activity qualified the law firm's activity as general debt collection rather than focused action against the security. *Id.* at 1217-18; Here, defendants conducted a non-judicial foreclosure, and did not seek judgment against plaintiffs personally."

In addition to the clear reasoning above as to why judicial foreclosure is collecting a "debt" as defined by the FDCPA, the WHEREFORE paragraph in the foreclosure complaint seeks that defendant pay any deficiency that may remain after the sale proceeds are applied. Hence, in this action, defendants are clearly seeking to collect a "debt" as defined by the FDCPA and the Code.

## V. THE FILING OF A FORECLOSURE COMPLAINT WHILE NOT BEING LICENSED BY THE CODE IS AN FDCPA VIOLATION

The New York City Administrative Code Title 20 Section 490 states:

"It shall be ***unlawful*** for any person to act as a debt collection agency without first having obtained a license in accordance with the provisions of this subchapter, and without first being in compliance with all other applicable law, rules and regulations." (emphasis added)

As a preliminary matter, the importance of the New York City licensing scheme is demonstrated by CPLR 3015 entitled "Particularity as to specific matters":

(e) License to do business. Where the plaintiff's cause of action against a consumer arises from the plaintiff's conduct of a business which is required by state or local law to be

licensed by the department of consumer affairs of the city of New York......the complaint shall allege, as part of the cause of action, that plaintiff is duly licensed and shall contain the name and number, if any, of such license and the governmental agency which issued such license...The failure of the plaintiff to comply with this subdivision will permit the defendant to move for dismissal...

Fein quotes *Lindbergh v. Transworld Systems, Inc.*, 846 F. Supp. 175, 181 (D. Conn. 1994) for the proposition that any violation of state law raises a claim under the FDCPA reflects a false, narrow, and overly mechanical reading of the FDCPA. Fein goes on to quote from *Williams v. Goldman & Steinberg*, 2006 U.S. Dist. LEXIS 50222 (E.D.N.Y. 2006), saying that the court held "[a] technical violation of a state or local licensing regulation does not constitute a violation of the FDCPA."

In actuality, the Court in *Goldman* overturned the Magistrate's recommendation and held that collecting within New York City while being required to be licensed by the Code but failing to be *is* a violation of the FDCPA. Judge Trager in distinguishing *Lindbergh* stated:

"I conclude that there was a violation of the FDCPA because the defendant did not have a license when it sent the Collection Letter to a New York City resident, as required by regulations of the City of New York. New York, NY., Admin Code tit. 20, ch. 2, § 20-490; *see Gaetano v. Payco of Wisconsin, Inc.,* 774 F. Supp. 1404, 1414-15 (D. Conn. 1990). The case, *Lindberg v. Transworld Systems, Inc.* relied upon by the Magistrate Judge, is distinguishable because in *Lindberg,* the collection agency was licensed in the plaintiff's state, just not at the address from which the letter was sent. Here, the unopposed allegations were not of such a technical nature: the defendant was not licensed at all in New York City, as required by local ordinance. Therefore, a violation has been established."

Defendants contends that it did not violate Section 1692(e)5 which states that it is deceptive to threaten to take any action that cannot be legally taken. Clearly, the filing of the lawsuit is only the first step in the process of Fein's collection. It has to take further actions and the filing of a lawsuit is a threat to take further action, specifically to continue with the litigation which would be unlawful because the Code says it is unlawful to collect without a license..

The case of *Marchant v. United States Collections West*, 12 F. Supp. 2d 1001(D. Arizona, 1998) states:

"[T]he defendants argue that, even if such action was the unauthorized practice of law, it did not violate § 1692e(5) of the FDCPA. That section prohibits the use of a "threat" to take "action that cannot legally be taken." The defendants assert that they made no threat; they simply took action. I think that such argument elevates form over substance. To argue that a collection agency can avoid the strictures of the FDCPA simply by acting where it has no legal authority, as opposed to *threatening* to act where it has no legal authority, would defy the very purposes of the section, one of which is to prevent "use of . . . false . . . means in connection with the collection of any debt." 15 U.S.C. § 1692e. See also *Poirier v. Alco Collections, Inc.*, 107 F.3d 347, 350-51 (5th Cir. 1997) (finding that act of filing suit was violation of subsection e(5))."

Recently, the Court of Appeals for the Eleventh Circuit in *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (2010) found that a collector who was required to but failed to be licensed by the state violates the FDCPA when collecting while unlicensed is unlawful:

"As explained herein, we do not hold that all debt collector actions in violation of state law constitute *per se* violations of the FDCPA. Rather, the conduct or communication at issue must also violate the relevant provision of the FDCPA. The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation

of a state debt collection law into a federal violation. Only those collection activities that use "any false, deceptive, or misleading representation or means," including "[t]he threat to take any action that cannot legally be taken" under state law, will also constitute FDCPA violations." (internal citations and quotations omitted)

The case of *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719 (D. Md., 2011) cites to *LeBlanc* and holds that the filing of a lawsuit without a required license is a violation of the FDCPA, specifically, 1692(e)5:

"[T]his Court interprets Section 1692e(5) of the FDCPA to include the *taking* of "action that cannot legally be taken." It simply strains credulity to believe that the FDCPA, a law that safeguards consumers from abusive and deceptive debt collection practices by debt collectors would prohibit threats of illegal actions but not the illegal actions themselves: Indeed, in the context of evaluating a claim under Section 1692(e)5 of the FDCPA, the Fourth Circuit has cautioned against taking such a "hyper-literal approach which ignores the ordinary connotations and implications of language as it is used in the real world." To find otherwise would undermine the consumer protection goals of the FDCPA."

*Bradshaw* continues: "As the District Court of Arizona noted in a similar case, "[t]his is not a case where minds could differ as to whether the collector would take action; the collector *had taken* action." As a matter of law, therefore, Hilco's filing of lawsuits against the class members constitutes "a threat to take . . . action that cannot legally be taken" in violation of 15 U.S.C. § 1692e(5), and summary judgment will be entered in favor of the Plaintiffs on this claim."

In *Gervais v. Riddle & Assocs., P.C.*, 479 F. Supp. 2d 270(D. Conn. 2007), the Court found that where a violation of e(5) is established which is more specific than e(10), a violation

of the broader e(10) is established as well.

Defendants also violated 1692e(9) because defendants by collecting debts within New York City when they were not allowed to, implied that they had the approval to collect within New York City when the law does not allow them to because they were not licensed.

## VI.    THE PAYOFF AND REINSTATEMENT LETTERS MAILED TO PLAINTIFF'S ATTORNEY THAT HAD PLAINTIFF'S NAME AND ADDRESS ON IT CONSTITUTE A "COMMUNICATION" AND VIOLATE THE FDCPA

The FDCPA defines the term communication: "(2) The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium." The definition is broad and easily encompasses communications made to the consumer's attorney. In fact, the letters specifically acknowledge that "federal law requires us to notify you that we are acting as debt collector, in an attempt to collect a debt." Hence, they are admitting that the communication mailed to plaintiff's attorney is governed by the FDCPA.

Fein does not even attempt to defend itself against the allegations that had the payoff and reinstatement letters been mailed in response to the consumer's request for debt verification they would have violated the FDCPA. Fein merely claims that its admitted error was a clerical error but a clerical error is not enough to escape FDCPA liability because Fein has not established that it has implemented adequate procedures to avoid the specific error at issue. See *Owen v. I.C. System, Inc.*, 629 F.3d 1263 (11th Circuit 2011). Fein has made no reference to a bona fide error defense.

The letter contained two false representations giving rise to FDCPA claims for mischaracterizing and giving false information regarding the debt. The first false statement is that the letter stated "RE: OneWest Bank vs. Williams" when this is a false statement because

the real title of the case is "Deutsche Bank vs. Williams." The second falsity is that the letter

stated payments should be made in the form of cashier's checks to OneWest Bank, without

clarifying that OneWest Bank is not the creditor. Combined with "Re: OneWest Bank vs.

Williams", this is a very sharp misrepresentation. This FDCPA violation is particularly deceptive

because plaintiff had originally taken out the loan from IndyMac Bank, FSB (Exhibit A to

Deutsch's motion) which was later acquired by OneWest Bank.

Defendant Deutsche argues that it escapes liability under the FDCPA because the

plaintiff initiated the contact with Fein even though plaintiff wrote to Fein in response to the

consumer's rights contained within the foreclosure lawsuit. Deutsche's argument with the precise

case that it cited has been rejected recently:

"On this point the Court again agrees with Plaintiffs that the facts as alleged in the

Complaint do not support Defendant's argument. Defendant cites to Gorham-DiMaggio v.

Countywide Home Loans, Inc. Civ. No. 05-0583, 2005 U.S. Dist. LEXIS 34237, 2005 WL

2098068 at *2 (N.D.N.Y. Aug. 30, 2005) for the proposition that communication that was

initiated by the debtor is not actionable under the FDCPA."

"The Court finds that, to the extent that Gorham-DiMaggio is persuasive authority, it is

factually inapplicable here. As Plaintiff's attachments demonstrate, the initial contact with

Plaintiffs came from the debt collector Udren in the form of a notice of intention to foreclose...In

response to that notice, Plaintiffs requested additional payoff and reinstatement information,

which Udren, acting as Defendant U.S. Bank's agent, sent on September 10, 2009." *Dehart v. US*

*Bank, N.A. ND*, 2011 U.S. Dist. LEXIS 92319 (D.N.J August 18, 2011)

The Circuit Court of Appeals for the Fourth Circuit in *Sayyed v. Wolpoff & Abramson*,

485 F.3d 226 (2007) held that a communication to a debtor's attorney is actionable under the

FDCPA. It reversed the district court's ruling and held that a communication to a debtor's attorney falls within the FDCPA and upheld actions for violations of 1692e (2)(A) and (10) as well as for violations of 1692f. "[T]he statute defines "communication" broadly as "the conveying of information regarding a debt directly or indirectly to any person through any medium."15 USC 1692a(2). A communication to debtor's counsel, regarding a debt collection lawsuit in which counsel is representing the debtor, plainly qualifies as an indirect communication to the debtor."

The Court noted that the Supreme Court case of *Heintz v Jenkins* makes clear that communications to a debtor's attorney are covered:

"If the statute left any room for doubt about this issue, *Heintz* resolved it. *Heintz* itself involved a communication from a debt collection attorney to debtor Darlene Jenkins' counsel, not to Jenkins herself. The Supreme Court held that Jenkins had a cause of action under the FDCPA on the basis of statements contained within the letter to her counsel. Thus, plainly, the FDCPA covers communications to a debtor's attorney." (emphasis added) *Heintz* involved a violation of the FDCPA Sections f(1) and e(2)(A).

Fein, Such, Kahn and Shepard was recently a defendant in the lawsuit entitled *Allen ex rel. Martin v. LaSalle Bank, N.A.,* 629 F.3d 364 (3d Cir. 2011) which held that "A communication to a consumer's attorney is undoubtedly an indirect communication to the consumer" and that a collection letter mailed to a consumer's attorney is governed by the FDCPA as if the letter was sent directly to the consumer. "The FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation. *See 1692k*. If an otherwise improper communication would escape FDCPA liability simply because that

communication was directed to a consumer's attorney, it would undermine the deterrent effect of strict liability."

The text of the FDCPA also makes clear that communications to an attorney are actionable under Sections "e" and "f". This is in sharp contrast to Section "c" subsection (a) which is entitled "Communications with the consumer generally" and only applies to communications with the consumer. The words of the statute makes this clear:

"Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector *may not communicate with a consumer* in connection with the collection of any debt….."

The complaint alleges violation of Sections "e" and "f" and these apply to communications with a consumer's attorney as well. The portion of Section "e" which is entitled "False or misleading representations" that Fein has violated states that it applies to acts in connection with the collection of a debt and it doesn't matter who they are directed at:

"A debt collector may not use any false, deceptive, or misleading representation or means *in connection with the collection of any debt*. Without limiting the general application of the foregoing, the following conduct is a violation of this section…….

(2) The false representation of—(A)the character, amount, or legal status of any debt;

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Section "f" entitled "Unfair practices" states "A debt collector *may not use unfair or unconscionable means to collect or attempt to collect any debt*. Without limiting the general application of the foregoing, the following conduct is a violation of this section" Again, the

words indicate that this subsection is aimed at the forbidden activity regardless of who it is aimed at:

(1) The collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

The Circuit Court of Appeals for the Seventh Circuit in addressing whether communications to attorneys are actionable ruled that "A false claim of fact in a dunning letter may be as difficult for a lawyer to see through as a consumer. Suppose the letter misrepresents the unpaid balance of the consumer's debt. The lawyer might be unable to discover the falsity of the representation without an investigation that he might be unable, depending on his client's resources, to undertake. Such a misrepresentation would be actionable whether made to the consumer directly, or indirectly through his lawyer."*Evory v. RJM Acquisitions Funding L.L.C.,* 505 F.3d 769 (2007).

*Guerrero v. RJM Acquisitions, LLC* 499 F.3d 926 (9th Cir. 2007) is not to the contrary. That case involved a communication which was directed only to the attorney in response to the attorney's letter in which he threatened to file suit for alleged FDCPA violations for the consumer he was representing. In addition, there was a strong dissenter from that decision. The decision in *Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002) discussed communications with an attorney in dicta. Importantly, the decision stated specifically that it is not ruling on the issue of whether a communication to a debtor's attorney is actionable under the FDCPA.

## VII.   DEFENDANTS HAVE VIOLATED GBL 349 BY FILING UNLAWFUL FORECLOSURE COMPLAINTS

Defendants have also violated General Business Law § 349(a). Under this law, deceptive acts or practices in the conduct of business are unlawful. *Karlin v. IVF America, Inc.,* 93 N.Y.2d 282 (1999). The essential elements of a cause of action alleging consumer fraud in violation of GBL 349 are that the defendant engaged in a consumer-oriented misleading practice and the plaintiff was injured thereby. *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 320 (1995) A deceptive practice, however, need not reach the level of common-law fraud to be actionable under section 349 (*see, Gaidon v Guardian Life Ins. Co., supra,* at 343).

The filing of an unlawful foreclosure lawsuit is a consumer-oriented misleading practice as Fein's conduct is directed towards consumers. Fein's activities of engaging in collection activities within New York while being unlicensed is clearly not a private dispute but rather is directed at the public at large. The cases of *Gaidon v. Guardian Life Ins. Co. of Am.,* 94 N.Y.2d 330 (1999) and *Monter v. Mass. Mut. Life Ins. Co.,* 12 A.D.3d 651 (2nd Dept. 2004) involved insurance companies, that require special licenses to issue insurance policies, and yet the court upheld the GBL 349 claim.

The damages are the additional fees and costs that were incurred on her mortgage as a result of this foreclosure lawsuit. These fees shouldn't have been incurred because the foreclosure lawsuit should not have been brought in the first place because the law firm of Fein is not licensed and they were not allowed to bring the lawsuit.

## **CONCLUSION**

The motions to dismiss should be denied in their entirety.

Dated: September 16 2011

By: _____

Shimshon Wexler
*Attorney for plaintiff*

25